SUSAN M. CHEHARDY, Chief Judge.
|2On appeal, defendant challenges his convictions and sentences for attempted first degree murder of a peace officer, resisting arrest by force, and disarming a peace officer. For the following reasons, we affirm.

Procedural History

On October 13, 2010, the St. Charles Parish District Attorney filed a bill of information charging defendant, Jerry Simmons, with resisting an officer by force or violence, in violation of La. R.S. 14:108.2 (Count 1); attempted first degree murder of a peace officer, Thomas Plaisance, in violation of La. R.S. 14:27 and 14:30 (Count 2); and disarming of a peace officer, in violation of La. R.S. 14:34.6.[1]
On July 6, 2011, the court denied defendant’s third verbal request to proceed pro se and instructed defendant to file a written motion within 15 days, which he did. After a Faretta[2] hearing on August 10, 2011, the court granted defendant’s motion to represent himself.[3] On September 7 and 8, 2011, the matter was tried | ¡¡before a 12-person jury.[4] On September 8, 2011, the jury found defendant guilty as charged on all counts.
On October 12, 2011, the trial judge sentenced defendant on Count 1, resisting a police officer with force or violence, to three years imprisonment in the Department of Corrections; on Count 2, attempted first degree murder of a peace officer, to 22 years imprisonment, in the Department of Corrections; and on Count 3, disarming of a police officer, to five years imprisonment in the Department of Corrections, to run concurrently. Defendant moved for appeal, which was granted.
On January 18, 2012, the trial court ordered a pre-sentence investigation. On March 28, 2012, the State filed a multiple offender bill of information, and defendant denied the allegations of the multiple offender bill. After several hearings, the trial judge found that the State had proven defendant to be a fourth felony offender. On May 29, 2012, the trial court vacated defendant’s original sentences and imposed concurrent, enhanced sentences, in the Department of Corrections, of 25 years imprisonment on Count 1, 75 years imprisonment on Count 2, and 25 years imprisonment on Count 3, without' benefit of probation, parole or suspension of sentence. Defendant filed a timely motion for appeal.

Facts

At trial, Deputy Thomas Plaisance of the St. Charles Parish Sheriffs Office (“SCPSO”) testified that, on August 23, 2010, at about 10:40 p.m., he stopped a driver on River Road in New Sarpy for speeding. After the driver pulled his truck into the parking lot of the Friendly Quick Stop at the corner of Clement and River Road, Officer Plaisance observed a *363 large pit bull terrier, untethered, in the bed of the truck. As Deputy Plaisance exited his police unit, the dog barked and lunged at him. Deputy Plaisance instructed the driver to restrain the dog so the driver put the |4dog in the cab of the truck. Unfortunately, Deputy Plaisance was unaware that the truck’s passenger window was open.
As Deputy Plaisance observed the driver, he suspected that the driver had been drinking alcohol. When asked, the driver admitted that he had consumed two to three beers that night but refused to submit to a field sobriety test.
When Deputy Plaisance instructed the driver to place his hands behind his back for arrest, he initially hesitated then turned as if to run away. Deputy Plai-sance drew and activated his Taser then again ordered the driver to place his hands behind his back and instructed him to lie on the ground. Eventually, the driver, identified as Jerry Simmons, defendant-herein, complied.
As defendant lay on the ground, Deputy Plaisance succeeded in getting the handcuff on defendant’s right wrist but, as Deputy Plaisance attempted to handcuff defendant’s left wrist, defendant rolled onto his back and struck Deputy Plaisance with his fist. As defendant punched Deputy Plai-sance, the pit bull jumped out of the truck and bit Deputy Plaisance on the head and on the side. When defendant saw his dog biting Deputy Plaisance, defendant encouraged the dog, saying “Kill him! Get him! Bite him!” Deputy Plaisance, who was kneeling, drew his gun and fired at the dog, which enraged defendant.
At this point, Deputy Plaisance had his attention on the dog, which he felt was the greater threat. When Deputy Plaisance attempted to holster his sidearm, he could not because he had forgotten to “decock it.” Defendant, who had moved behind Deputy Plaisance, immediately attempted to remove the weapon from the holster. Deputy Plaisance, who was still kneeling, realized that he would lose control of his sidearm and released the magazine from the weapon, which left only one round of ammunition in the gun. Defendant did gain control of Deputy Plaisance’s sidearm but dropped it during the struggle.
15As the two men struggled, defendant knocked Deputy Plaisance to the ground, straddled his torso, and struck him with his fists in the face and jaw. Defendant also repeatedly lifted Deputy Plaisance’s head and slammed it into the ground, which caused lacerations on his scalp. Additionally, defendant bit Deputy Plai-sance’s first finger, causing a deep laceration.
During this incident, James Wilcox, his wife, three children, and his friend, Travis Credeur, were standing outside their houses across the street from the Friendly Quick Stop. James Wilcox testified that, when Deputy Plaisance and defendant began speaking loudly, the dog jumped out of the truck and attacked Deputy Plaisance. Mr. Wilcox testified that, after defendant started beating Deputy Plaisance’s head into the ground, he and his friend, Pete Massengale, approached to help the officer. According to Mr. Massengale, he thought that if he failed to stop defendant, defendant was going to kill Deputy Plai-sance.
Mr. Massengale, who grabbed a wooden boat paddle from another bystander, approached Deputy Plaisance and warned defendant to stop. According to Deputy Plaisance, when Mr. Massengale asked, Deputy Plaisance told Mr. Massengale to hit defendant with the paddle. Mr. Mas-sengale struck defendant in the shoulders but defendant ignored Mr. Massengale and continued to hit Deputy Plaisance. Mr. *364 Massengale struck defendant again in the shoulders, to no avail. Finally, Mr. Mas-sengale struck defendant forcefully, with the flat of the paddle, in the back of the head.
Defendant finally stopped hitting Deputy Plaisance and rolled to his side. After defendant released him, Deputy Plaisance tased defendant, which subdued him. Lieutenant Mike Folse arrived almost immediately, and he and Deputy Plaisance together were finally able to handcuff defendant. The dashboard camera | fiin Deputy Plaisance’s vehicle recorded the incident. The video of the incident was introduced into evidence and played for the jury.
During the altercation, Deputy Plaisance received a laceration to his forehead, which required stitches; the dog bites on his scalp, which required stitches; the human bite on the right index finger, which required stitches and caused the most time out of work; and bruising and swelling to his face and jaw. For four days, he was unable to chew solid food.
Lieutenant George Breedy of the SCPSO testified that, on August 24, 2010, he was dispatched to the St. Charles Parish Hospital to investigate defendant for driving while intoxicated and obtained consent from defendant to draw blood. The Louisiana State Police Crime Lab tests showed that defendant’s blood alcohol level was 0.20 grams percent, which was almost three times the legal limit of .08. ’
After hearing the testimony and evidence, the 12-person jury unanimously found defendant guilty as charged of resisting arrest by force, attempted first degree murder of a peace officer, and disarming a peace officer. This appeal follows.

Law and Analysis

On appeal, defendant argues one counseled and twelve pro se assignments of error: in his counseled assignment of error, defendant argues that the trial court erred in denying the motion to continue to allow Mr. Simmons time to adequately prepare a pro se defense; in his first pro se assignment of error, defendant argues that the trial court erred in denying his request for compulsory process; in his second pro se assignment of error, defendant argues that the trial court erred in its jury instruction regarding reasonable doubt; in his third pro se assignment of error, defendant argues that he was prevented from providing the jury with all relevant facts to render a proper verdict; in his fourth pro se assignment of error, defendant Largues that he was unable to conduct any type of meaningful investigation after his request to represent himself was granted; in his fifth pro se assignment of error, defendant argues that the trial court erred in denying his motion to change his plea to not guilty by reason of insanity; in his sixth pro se assignment of error, defendant argues that he did not have “full confrontation;” in his seventh pro se assignment of error, defendant argues that his defense was prejudiced because his legs were shackled during the trial; in his eighth pro se assignment of error, defendant argues that the “prosecutor’s remark” affected the jury’s decision; in his ninth pro se assignment of error, defendant argues that he was denied effective assistance of counsel before trial; in his tenth pro se assignment of error, defendant argues that the trial judge erred in failing to appoint “replacement” counsel and allowing him to represent himself; in his eleventh pro se assignment of error, defendant argues that the trial judge abused his discretion in denying his pre-trial motion to recuse; and, in his twelfth, and final, pro se assign *365 ment of error, defendant “wishes to challenge not guilty plea on advice of counsel.”
Sole Counseled Assignment of Error[5] and Pro se Assignments One,[6] Three,[7] Four,[8] and Six[9]
In these assignments, defendant argues that the trial court erred in denying the motion to continue trial. Specifically, defendant argues that by denying his motion to continue, the trial court abridged his right to present a defense, right to confrontation, and right to a fair trial.
| ^Defendant specifically argues that his right to present a defense and right to confrontation were violated when the trial judge denied him a continuance to allow him to subpoena the police officers’ employment and health records, and to seek appointment of a psychiatric expert to determine his mental state during the incident.
Defendant asserts that his right to a fair trial was violated because he had only one month to prepare his own defense, without means or time to conduct any meaningful investigation, or contact any lay and expert witnesses. Defendant finally contends that the guilty verdict was clearly attributable to the error so his conviction should be reversed.
The State responds that the trial judge did not err in denying defendant’s continuance. First, the continuance was requested on the eve of trial, one month after the trial judge granted defendant’s third request to represent himself. Next, defendant had been requesting permission to proceed pro se since March 30, 2011 and had filed numerous pro se motions while he was represented. Defendant received all of the State’s discovery responses in open court on May 25, 2011, which was more than three months before trial. He also received a copy of his attorney’s entire file in court on August 24, 2011. Further, defendant fails to establish witnesses that he would have called or evidence that he would have presented if given the opportunity. Most importantly, the State asserts that the testimony and evidence presented in support of defendant’s guilt was overwhelming so that the guilty verdict was unattributable to the alleged error.
Our review of the record reflects that, on August 10, 2011, the trial judge granted defendant’s request to represent himself and reiterated that the trial would commence on September 7,-2010. Defendant did not object.
[nOn August 24, 2011, defense counsel provided defendant with a copy of his entire file and reported that defendant had previously viewed the video of the incident. Further, the trial judge granted defendant’s request to immediately issue a subpoena duces tecum for defendant’s hospital records from the date of the incident. Although defendant stated that the Septem *366 ber 7, 2011 trial date was “unrealistic,” he did not move for a continuance and did not object when the judge discussed the impending court date.
On August 30, 2011, defendant filed numerous motions, including a motion to continue trial to allow him to prepare for trial. In his written motion for continuance, defendant argued that, after examining the case file provided by defense counsel on August 24, 2011, he realized that he had not been evaluated by a psychiatrist. Further his attorney had not performed a background check on the victim, or obtained the victim’s hospital records, or other pertinent evidence defendant had repeatedly requested from defense counsel. Defendant asserted that the court had imposed an unrealistic time frame of 28 days for a pro se defendant to participate in proceedings, which violated defendant’s right to due process. On September 6, 2011, after a contradictory hearing, the trial judge denied this motion.
A motion for a continuance must be made in writing, allege the specific grounds upon which it is based and be filed at least seven days prior to trial. La.C.Cr.P. art. 707. At any time upon written motion and after contradictory hearing, the court may grant a continuance but only upon a showing that the motion is in the interest of justice. Id.
At the discretion of the court, a timely filed motion for continuance may be granted if there is good ground to continue. La.C.Cr.P. art. 712. Whether to grant or refuse a motion for a continuance rests within the sound discretion of the trial judge, and a reviewing court will not disturb such a determination absent a clear 1 inabuse of discretion. State v. Shannon, 10-580 (La.App. 5 Cir. 2/15/11), 61 So.3d 706, 714-15, writ denied, 11-559 (La.9/30/11), 71 So.3d 283. Generally, a conviction will not be reversed even on a showing of an improper denial of a motion for a continuance absent a showing of specific prejudice. State v. Manning, 03-1982 (La.10/19/04), 885 So.2d 1044, 1077, cert. denied, 544 U.S. 967, 125 S.Ct. 1745, 161 L.Ed.2d 612 (2005); State v. Scie, 11-254 (La.App. 5 Cir. 12/28/11), 83 So.3d 1082, 1098.
Here, the defense had more than 10 months between defendant’s arraignment and the scheduled trial date to prepare for trial. As early as March 30, 2011, defendant had requested to represent himself. When the trial judge finally granted defendant’s request to represent himself on August 10, 2011, the trial judge warned defendant that the trial, which had already been continued at least twice, would commence on September 7, 2011. The trial judge reiterated that warning on August 24, 2011.
Based on the record before us, we cannot say that the trial court abused its sound discretion by denying defendant’s motion to continue. Moreover, defendant has failed to make a showing of specific prejudice to warrant reversal of his convictions. See State v. Victor, 11-45 (La.App. 5 Cir. 11/15/11), 82 So.3d 301, 307-10. Accordingly, we find no merit in the foregoing assignments of error.

Pro Se Assignment of Error Two

In this assignment of error, defendant argues that the trial court erred in its jury instruction regarding reasonable doubt. Defendant complains that, although the definition for reasonable doubt was given, the court failed to provide the jury with a definition for “all possible doubt.”
Here, defendant did not object to the jury charges when the trial court discussed the charges at length with the prosecution and defense before reading the |ncharges to the jury. A contemporaneous objection *367 is required to preserve the issue of an improper jury instruction for appellate review. See La.C.Cr.P. art. 801(C);[10] State v. Wilson, 93-617 (La.App. 5 Cir. 1/25/94), 631 So.2d 1213, 1216-19, writ denied, 94-476 (La.11/4/94), 644 So.2d 1046. We find that defendant failed to preserve his right to appeal any alleged issue with the jury instructions. Based on the foregoing, we decline to address this assignment of error.

Pro Se Assignment of Error Five

In this assignment, defendant argues that the trial court erred by denying his oral pro se motion to change his plea from not guilty to not guilty by reason of insanity. Defendant asserts that the court denied him the right to plea freely.
On August 24, 2011, defendant made an oral motion to change his plea from not guilty to not guilty by reason of insanity. The trial court denied defendant’s motion, citing La.C.Cr.P. art. 561, which states that “[t]he defendant may withdraw a plea of not guilty and enter a plea of not guilty and not guilty by reason of insanity within ten days after arraignment.” The trial judge noted that defendant’s arraignment was in 2010.
The trial court further stated that, although La.C.Cr.P. art. 561 provides that a defendant may change a plea at any time before the commencement of trial for good cause shown, defendant’s burden to show good cause increased with each day that his trial drew nearer. The trial court noted that, according to jurisprudence, a defendant can demonstrate good cause when he produces indicia of insanity and shows that the plea change is not a delaying tactic to achieve a strategic advantage. The trial judge articulated that, defendant-herein, in contrast, 112had not produced any evidence in the proceedings thus far that he suffered from mental illness, and this request was more likely a delaying tactic.
Initially, we note that defendant did not object to the trial judge’s denial of his request to change his plea when the ruling was made on August 24, 2011. A contemporaneous objection is required to preserve the issue properly for appellate review. La.C.Cr.P. art. 841. Having made no objection on the date of the ruling, the issue is not preserved for review.
 Moreover, even if the issue had been preserved for review, we would find no error in the trial court’s ruling. To change his plea to not guilty by reason of insanity, a defendant must show, by something less than a preponderance of the evidence, “good cause,” or some evidentia-ry basis, for the plea. State v. Miller, 05-1826 (La.6/29/07), 964 So.2d 911, 922. Where good cause is lacking, the trial court does not abuse its discretion in denying the change of plea. Id. Conversely, a defendant with no evidence whatsoever of mental illness would not be able to show good cause as required by La.C.Cr.P. art. 561. Mat923.
In this case, defendant informed the trial judge on August 10, 2011, that he had never been treated for mental illness during his Faretta hearing. Thus, the record is devoid of evidence that defendant suffered from mental illness so, if we were to address this issue, we would find that the trial court did not abuse its discretion in *368 denying defendant’s motion to change his plea. Again, if this issue had been preserved, we would find no error.

Pro Se Assignment Of Error Seven

In this assignment of error, defendant challenges the logistics of the courtroom during trial, including the trial court’s instruction that defendant remain restrained with leg shackles, and that the law enforcement officers be allowed to sit 113together. Specifically, defendant argues that the leg restraints prevented him from properly defending himself because he could not walk around in front of the jury. Next, defendant argues that the trial was effectively closed because, other than four unrelated spectators, the courtroom was populated only by members of the jury, “judicial officers,” and six to eight law enforcement officers in plain clothes. Defendant sat alone at the defense table with his standby counsel and security in the gallery directly behind him. Defendant argues that this atmosphere constituted an unacceptable risk that the jury would be prejudiced against him.
With regard to shackling, on September 6, 2011, which was the day before trial, the trial judge instructed defendant that he would be shackled at the defense table throughout the proceedings. The trial judge also instructed the prosecutors that they would remain at their table during the trial and created an elaborate evidence delivery system using court personnel so that the jury would not be aware that defendant was shackled.
Initially, we note that, when the trial judge issued this order, defendant did not object at that time that he would be shackled to the floor nor did he raise an objection at any time during trial. A contemporaneous objection is required to preserve the issue properly for appellate review. La.C.Cr.P. art. 841. Having made no objection to this ruling, the issue is not preserved for review.
Moreover, even if the issue had been preserved for review, we would find no error in the trial court’s ruling. When shackling is raised for the first time after conviction, the mere fact that the defendant was shackled in the presence of the jury does not afford immediate grounds for relief. The defendant must additionally show that the shackling seriously affected the fairness of the trial, and that the trial judge abused his discretion to the point that a fair trial was not possible under the circumstances. See, State ex rel. Miller v. Henderson, 329 So.2d 707, 712 (La.976). As noted above, the trial judge went through extensive measures to ensure the public’s safety while preventing the jury from learning that defendant was shackled during trial. If this matter were preserved for review; we would find no error.
Next, defendant contends that the presence of law enforcement officers in the courtroom prejudiced him. Again, the record does not reflect that defendant complained of this issue at trial. A contemporaneous objection is required to preserve the issue properly for appellate review. La.C.Cr.P. art. 841. Having made no objection, the issue is not preserved for review.
Moreover, even if the issue had been preserved for review, we would find no error in the trial court’s ruling. “When a convicted defendant claims denial of a fair trial, because of a courtroom arrangement, a reviewing court’s first inquiry should be whether the practice or action complained of was inherently prejudicial. If not inherently prejudicial, the second inquiry should be whether the accused has shown actual prejudice to him.” State v. Ferrell, 94-702 (La.App. 5 Cir. 5/30/95), 656 So.2d 739, *369 743-44, writ denied, 95-2360 (La.4/18/97), 692 So.2d 433.
Here, the record does not show where the officers in plain clothes were seated. There is no indication that they were armed. We cannot say that the presence of these officers was inherently prejudicial. Likewise, we cannot say that defendant has demonstrated actual prejudice. There is nothing in the record suggesting that the placement or demeanor of any spectator marked defendant as dangerous or caused a juror to believe that his or her safety was possibly threatened. Again, if this matter were preserved for review, we would find no error.
11sPro Se Assignment Of Error Eight
In this assignment, defendant argues that the prosecutor made unfair remarks during closing arguments that were calculated to psychologically affect the jury. During the State’s rebuttal to defendant’s closing argument, the prosecutor asked the victim to stand up and said, “If you want to call him a liar, call him a liar.” The defendant objected and the trial judge asked the victim to be seated. The defendant did not ask for an admonition to the jury.
The scope of argument and rebuttal is defined by La.C.Cr.P. art. 774, which reads:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state’s rebuttal shall be confined to answering the argument of the defendant.
Closing arguments in criminal cases are restricted to evidence admitted to trial, to lack of evidence, to conclusions of fact that may be drawn therefrom, and to the law applicable to the case. The argument may not appeal to prejudice. State v. Fernandez, 03-987 (La.App. 5 Cir. 12/30/03), 864 So.2d 764, 768.
A prosecutor has considerable latitude in making closing arguments. State v. Taylor, 93-2201 (La.2/28/96), 669 So.2d 364, 374, cert. denied, 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996); State v. Williams, 03-942 (La.App. 5 Cir. 1/27/04), 866 So.2d 1003, writ denied, 04-450 (La.6/25/04), 876 So.2d 832. A conviction will not be reversed due to improper remarks during closing argument unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict. State v. Fernandez, supra. In making this decision, credit should be given to the jury’s good sense and fairmindedness. State v. Eaton, 524 So.2d 1194, 1208 (La.1988), cert. denied, 488 U.S. 1019, 109 S.Ct. 818, 102 L.Ed.2d 807 (1989).
In this matter, although the prosecutor’s comment could be viewed as an improper plea to prejudice, we look at the wealth of evidence presented against defendant and are not “thoroughly convinced that the remarks influenced the jury and contributed to the verdict.” State v. Rochon, 98-717 (La.App. 5 Cir. 3/10/99), 733 So.2d 624, 630. Based on the foregoing, we find that defendant’s eighth pro se assignment of error lacks merit.

Pro Se Assignment Of Error Nine

In this assignment of error, defendant argues that defense counsel’s pretrial representation was ineffective. Defendant argues that he was forced to author his own defense even before he was allowed to proceed pro se because defense counsel never discussed a defense with him. Specifically, defendant argues that his lawyer refused to defend him using the trial strategy that defendant desired, *370 which included introducing evidence of (1) police harassment that caused defendant to “snap,” and (2) a racial discrimination lawsuit against his employer, which showed his mental fragility and supported an insanity defense. Defendant also alleges that his attorney failed to investigate (1) defendant’s assault while being treated at St. Charles Hospital and (2) employment and health records for the victim and arresting officers.
A criminal defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In order to prove ineffective assistance of counsel, the defendant must show that counsel’s | ^performance was deficient- and that this deficiency prejudiced the outcome of the trial. Strickland, supra.
To show that counsel was deficient, the defendant must demonstrate that counsel failed to meet the level of competency normally demanded of attorneys in criminal cases. State ex rel. Graffagnino v. King, 486 So.2d 559, 564 (La.1988). To prove prejudice, the defendant must demonstrate that, but for counsel’s unprofessional conduct, the outcome of the trial would have been different. Strickland, supra. An error is considered prejudicial if it was so serious as to deprive the defendant of a fair trial, or “a trial whose result is reliable.” Id.
The Louisiana Supreme Court has held that, generally, a claim of ineffective assistance of counsel is most appropriately addressed through an application for post conviction relief rather, than direct appeal, which affords the parties an opportunity to make an adequate record for review. State v. Truitt, 500 So.2d 355 (La.1987). However, if the appeal record contains sufficient evidence to decide the issue, and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Fairley, 02-168 (La.App. 5 Cir. 6/26/02), 822 So.2d 812, 816, writs denied, 03-1427 (La.4/23/04), 870 So.2d 290 and 08-2581 (La.1/30/09), 999 So.2d 755.
In this case, the appellate record is insufficient to consider defendant’s allegations of pre-trial ineffective assistance of counsel. Decisions relating to failure to investigate certain theories or other trial preparation issues would require an evi-dentiary hearing, and cannot possibly be decided in this appeal. State v. Holt, 08-1276 (La.App. 5 Cir. 5/26/09), 12 So.3d 502, writ denied, 09-1681 (La.3/26/10), 29 So.3d 1249; State v. Watts, 98-1073 (La.App. 5 Cir. 5/19/99), 735 So.2d 866. Only in an evidentiary hearing in the district court, where the |isdefendant could present evidence beyond that contained in the instant record, could these allegations be sufficiently investigated.[11] Accordingly, we decline to address this assignment of error.

Pro Se Assignment of Error Ten

With respect to the trial, defendant argues that the trial court erred in failing to appoint replacement counsel and forcing defendant to represent himself, which constructively denied defendant’s right to effective assistance of counsel.
Once defendant began representing himself, he had the opportunity to present his own trial strategy. A self-represented defendant is unable to later claim he was denied effective assistance of *371 counsel by his own representation. State v. Bell, 09-199 (La.11/30/10), 58 So.3d 437, 445-46, cert. denied, — U.S. -, 131 S.Ct. 3035, 180 L.Ed.2d 856 (2011).
Further, to the extent that defendant argues that he should have been appointed another attorney at no cost, we find no error in the trial court’s ruling. If a defendant is indigent, he has the right to court-appointed counsel. An indigent defendant does not, however, have the right to have a particular attorney appointed to represent him. State v. Berry, 08-151 (La.App. 5 Cir. 6/19/08), 989 So.2d 120, 130, writ denied, 08-1660 (La.4/3/09), 6 So.3d 767. An accused’s right to choose his counsel allows the accused to retain the attorney of his choice, if he can manage to do so. Id. That right is not absolute and cannot be manipulated so as to obstruct orderly procedure in courts and cannot be used to thwart the administration of justice. See also, State v. Brown, 03-897 (La.4/12/05), 907 So.2d 1, cert. denied, 547 U.S. 1022, 126 S.Ct. 1569, 164 L.Ed.2d 305 (2006). Here, the trial judge did not err in refusing to appoint substitute counsel.
| iaFinally, the most important claim of this assignment of error is that defendant did not freely and voluntarily waive his right to assistance of counsel.
The Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution give a defendant the right to counsel as well as the right to defend himself. State v. Brooks, 452 So.2d 149, 155 (La.1984) (on rehearing); State v. Berry, supra. An accused has the right to choose between the right to counsel and the right to self-representation. State v. Bridgewater, 00-1529 (La.1/15/02), 823 So.2d 877, 894, cert. denied, 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003).
A defendant may elect to represent himself if the choice is knowingly and intelligently made and the assertion of the right is clear and unequivocal. State v. Campbell, 06-0286 (La.5/21/08), 983 So.2d 810, cert. denied, 555 U.S. 1040, 129 S.Ct. 607, 172 L.Ed.2d 471 (2008) (citing Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). The right to counsel may be waived, but the accused must know of the right and intentionally relinquish the right. See Faretta, supra.
In accepting a waiver of counsel, the trial court should advise the defendant of the nature of the charges, the penalty range for the charges, and the dangers and disadvantages of self-representation, such as the failure to recognize objections to inadmissible evidence and the inability to adhere to technical rules governing trials. State v. Bruce, 03-918 (La.App. 5 Cir. 12/30/03), 864 So.2d 854, 857. In addition, the court should inquire into the defendant’s age, education and mental condition, and should determine according to the totality of circumstances whether the accused understands the significance of the waiver. Id.
Whether a defendant has knowingly, intelligently, and unequivocally asserted the right to self-representation must be determined on a case-by-case Unbasis, considering the facts and circumstances of each case. State v. Leger, 05-0011 (La.7/10/06), 936 So.2d 108, 147-48, cert. denied, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007).
Courts must indulge in every reasonable presumption against a waiver of counsel. State v. LaGarde, 07-288 (La.App. 5 Cir. 10/30/07) 970 So.2d 1111, 1119. The trial court is given much discretion in determining whether the defendant’s waiver was knowing and intelligent. Id. at 1120. An appellate court should not re *372 verse the trial court ruling absent an abuse of its discretion. Id.
On August 10, 2011, the trial court heard defendant’s written motion to dismiss his appointed counsel and represent himself. During the Faretta colloquy, the trial judge established that defendant was 48 years old and that he completed the tenth grade then obtained a GED. Defendant also indicated that he had never been under a doctor’s care for any type of mental or psychiatric illness.
The trial judge noted that defendant had spoken in court a number of times, and he never detected any type of impediment to his ability to understand the court proceedings. Defendant agreed that he was able to understand the proceedings.
Defendant indicated that he understood that he was charged with three different counts, which consisted of attempted first degree murder of a police officer, resisting an officer by force, and disarming of a police officer. Defendant indicated that he understood that, if he was convicted on those felonies, the penalties for those offenses were: a minimum of 20 years and a maximum of 50 years with the Department of Corrections without the benefit of probation, parole, or suspension of sentence for attempted first degree murder of a police officer; a maximum sentence of 3 years with the Department of Correction on the charge of resisting arrest by force; and a maximum of 5 years with the Department of Corrections on the charge of disarming of a police officer. Defendant also stated |81that he understood that the State intended to file a multiple offender bill of information, which could expose him to the maximum sentence of life in prison.
Defendant stated that he understood that, because of the seriousness of the charge against him and the potential consequences of a guilty verdict, the trial judge believed it was not in defendant’s best interest to proceed without assistance of trained counsel. Defendant indicated that he understood that he would be held to the same standard regarding the rules of criminal procedure and applicable law. After this discussion, the trial judge granted defendant’s request to represent himself and appointed two lawyers as standby counsel.
In the present case, the trial court verified defendant’s age, education level, and the fact that he had no history of mental illness. The court ensured that defendant understood the seriousness and potential consequences of a guilty verdict. Considering the foregoing, we find that the trial judge did not abuse his vast discretion in determining that defendant’s waiver of his right to counsel was knowing and intelligent. We find that this assignment of error lacks merit.

Pro Se Assignment Of Error Eleven

In his eleventh assignment of error, defendant contends that the trial judge was not impartial and was not concerned with the fundamental fairness of the proceedings. On August 30, 2011, defendant filed a motion to recuse the trial judge for bias or prejudice, which was denied on the day before trial was to commence, September 6, 2011.
On appeal, defendant claims that the trial judge “failed to exercise sound discretion in utilizing resources at its disposal to maintain an atmosphere of impartiality,” which are different grounds for recusal than he raised in the trial court. A defendant is limited on appeal to those grounds articulated at trial, and a new basis for the objection may not be raised for the first time on appeal. State v. Jackson, 450 So.2d 621 (La.1984); State v. Alvarez, 10-925 (La.App. 5 Cir. 6/29/11), 71 So.3d 1079, 1085. This issue is not properly before this Court on appeal.

*373
Pro Se Assignment of Error Twelve

In his twelfth assignment of error, defendant states that he “challenges his not guilty plea on advice of counsel.” However, defendant fails to brief this issue. Therefore, we consider this specification abandoned. U.R.C.A. 2-12.4; State v. Fernandez, 03-987 (La.App. 5 Cir. 12/30/03), 864 So.2d 764.

Error Patent Discussion

Defendant requests an error patent review, which this Court routinely performs in accordance with La.C.Cr.P. art. 920. Our review reveals no errors that require correction.

Conclusion

Based on the foregoing, we affirm defendant’s convictions and enhanced sentences for attempted first degree murder of a peace officer, resisting arrest by force, and disarming a peace officer.

AFFIRMED.

. On February 22, 2011, the State amended the bill on information as to Count 2 to indicate that the victim of the offense was "a peace officer."

. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

. The trial judge retained defense counsel and appointed an additional attorney as standby trial counsel.

. Defendant represented himself for the entire trial, including opening and closing statements, and direct and cross examination of all witnesses.

. Defendant’s counseled assignment of error number one, and pro se assignments of error numbers one, three, four and six will be discussed together because they are related.

. In his first pro se assignment of error, defendant argues that the trial court erred in denying his request for compulsory process.

. In his third pro se assignment of error, defendant contends that he was prevented from providing the jury with all relevant facts to render a proper verdict.

. In his fourth pro se assignment of error, defendant argues that he was unable to conduct any type of meaningful investigation because, after his request to represent himself was finally granted, he only had 28 days to prepare his defense.

. In his sixth pro se assignment of error, defendant argues that he could not obtain evidence to support his defense so he was prevented from fully exercising his right to confront the State’s witnesses.

. La.C.Cr.P. art. 801(C) provides that:
A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefor shall be stated at the time of objection. The court shall give the party an opportunity to make the objection out of the presence of the jury.

. The defendant will have to satisfy the requirements of La.C.Cr.P. art. 924 et seq. to receive such a hearing.