LILJEBERG, J.
| defendant appeals his convictions and sentences-for two counts of armed robbery and two counts of possession of a firearm by a convicted felon. For the following reasons,' we affirm defendant’s convictions. We also affirm his sentences on counts two and four, and affirm, as amended, his sentences - on- counts one and three. Further, we remand to the trial court for correction of an error patent.

PROCEDURAL HISTORY

Defendant, Ronald Alexander, was charged by bill of information with two counts of armed robbery (counts one and three), in violation of La. R.S. 14:64, and two counts of possession of a firearm by a convicted felon (counts two and four), in violation of La. R.S. 14:95.1. Duwan Sea-ton was charged as a co-defendant in both armed robbery counts. After defendant waived a'jury, trial was held before the trial judge. The trial judge found defendant guilty as charged on all counts.
Defendant was sentenced to 40 years imprisonment at hard labor on count one, ten years imprisonment at. hard labor on count two, 40 years imprisonment at hard labor on count three, and ten years imprisonment at hard labor on count four. The sentences were ordered to run concurrently and without benefit of parole, probation, or suspension of sentence. Defendant was also sentenced to an additional five years imprisonment at hard labor on counts one and three due to the firearm enhancement set forth in La. R.S. 14:64.3, to run consecutively with the other sentences.
[ thereafter, the State filed a multiple offender bill of information with regard to count one, alleging that defendant was a second felony offender.' After a hearing, the trial judge found defendant to be a second felony offender, vacated his sentence as to count one, and resentenced defendant as a multiple offender to 49 ½ years" imprisonment at hard labor, to run concurrently with the sentences' imposed on counts two, three, and four. Additionally, the trial court stated, “[hjowever, with respect to the dangerous weapon being used, the Court is going to run the" five years with respect to count one consecutive to the forty-nine-and-a-half years,” for a total enhanced sentence of 54½ years imprisonment. Defendant appeals.

*846
FACTS

Adeel Masood, a cab driver, testified that he was robbed shortly after-midnight on June 5, 2014, when he exited his cab to return home. He stated that a man came from behind him, placed a gun in his back, and demanded money. Mr. Masood gave the man everything he had, including his phone, keys, wallet, and money. Mr. Ma-sood testified that he saw the man’s face “a little bit,” and saw the gun, which was a gray color.
A few days later, on June 10, 2014, a police officer presented Mr. Masood with a photographic lineup and he identified defendant as the perpetrator. At the time of trial, Mr. Masood indicated that he was unable to identify the person who robbed him because it was two years later. However, according to Mr. Masood, at the time that the photographic lineup was presented to him, he was certain that he picked out the right person.
Deputy Thomas Rogerson of the Jefferson Parish Sheriffs Office testified that in the early morning hours of June 5, 2014, he responded to the scene of an armed robbery. Deputy Rogerson met with the victim, Mr. Masood, who informed him that he was a taxi driver and that he parked his cab in the 6200 block of Riverside Drive in Metairie, Louisiana. When Mr. Masood exited the cab to | ¡¡relocate to his personal vehicle, he heard a voice behind him. Mr. Masood informed the deputy that he observed a light-skinned black male wearing a black shirt, green pants, and a green hat. He also told Deputy Rogerson that the man had a silver firearm and demanded his belongings. He stated that he gave the man his phone, wallet, keys, and approximately $110.00 in cash.
Haley Duerst testified that on June 6, 2014, at approximately 6:15 p.m., she was robbed while in the parking lot of her apartment complex located at 6201 Riverside Drive. Ms. Duerst explained that after she parked and exited her vehicle, she heard someone approaching her. As she turned, she saw a man pointing a gray and black pistol in her face. She stated that the man told her to “give me what you got.” Ms. Duerst testified that she continued walking, and he violently ripped her purse off of her arm and ran away.
Ms. Duerst testified that her keys, phone, wallet, debit cards, license, and cash were in her purse. She described the perpetrator as a light-skinned black male approximately her height and age with a “ruddy” complexion, which she indicated may have been stubble, acne scars, or “pot marks” on his face. During the investigation, Ms. Duerst was unable to identify the perpetrator from a photographic lineup.
Ms. Duerst testified that all of the photos from her phone were automatically backed up to her Microsoft One Drive. She testified that when she logged into her account on the day after the incident, she found three pictures taken by someone else. Ms. Duerst stated that one of the photos depicted a person who appeared to be in her neighborhood and another photo depicted the same person holding a gun. She testified the person in the photos was not the person who robbed her. However, she recognized the gun as the same one used during the robbery. She stated that she now knows that the person in the photos was Duwan Seaton.
LDuwan Seaton testified that in June of 2014, she was living with her girlfriend, Jasmine Robinson, in an apartment on Riverside Drive. She stated that defendant was also staying in that apartment. She testified that on June 5, 2014, shortly after midnight, she left the apartment with defendant to obtain some “weed.” According to Ms. Seaton, the “weed man” was not *847 there, so she and defendant began walking back to the apartment.
Ms. Seaton testified that she was about to take a shortcut home when defendant ran up to a man who was getting out of his cab and demanded that the , man give him everything. The man gave defendant his phone and wallet, and then defendant and Ms. Seaton ran in different directions. Ms. Seaton testified that she did not see defendant holding a gun. She stated that they met back inside of the apartment, where defendant removed everything from the wallet, including approximately $50.00, an I.D., and a credit card. Seaton testified that defendant gave her some cash from the wallet.
Ms. Seaton testified that on the next day, June 6, 2014, between 6:30 p.m. and 7:00 p.m., she and defendant were checking car doors to see if they were unlocked. Ms. Seaton testified that after she retrieved some change from an unlocked car, she heard and saw a woman screaming for help. As the woman was screaming, she saw defendant “jacking” or grabbing the woman’s purse. Ms. Seaton again testified that she did not see defendant with a gun. She stated that defendant ran off, and she ran in a different direction to Ms. ‘Robinson’s apartment.
■ According to Ms. Seaton, when defendant arrived at the apartment, he had a multi-colored purse and'he stated that he “hit a lick,” which she explained meant to “jack somebody” or “you took something without anybody offering or giving it to you.” Defendant emptied everything out of the purse, including a wallet, an I.D., and a credit card. Ms. Seaton testified that she did not see a cell phone at that time.
| ¿According to Ms. Seaton, after they emptied the purse, defendant drove himself and Ms. Seaton to a Discount Zone in a Jeep owned by defendant’s girlfriend, Lakeedra Bolden. Ms. Seaton stated that she and defendant used the credit card from the purse to purchase gas for the Jeep and for others at the gas station in exchange for cash.
After they returned to the apartment, defendant gave Ms. Seaton a phone that he pulled out of his pocket. Ms. Seaton stated that she us'ed the .phone' to make calls, to take pictures, and to' text. the pictures to a friend. She testified that Ms. Robinson took two pictures of her with the phone, including one picture in which Ms. Seaton was holding a'gun.
Detective Marc Macaluso testified that he investigated the robbery of Ms. Duerst, He stated that Ms. Duerst provided a description of the suspect as a black male, approximately 5'10" to 5'11," 20 to 25 years old, with a light, complexion and acne scarring on his cheeks. Detective Macaluso testified that Ms. Duerst described the gun used in the robbery as a black and silver semiautomatic pistol.
Detective Macaluso testified that the day after .the robbery, Ms. Duerst informed him of pictures on-her phone that she was able to remotely access. Additionally, she informed him of some numbers that she did not recognize and debit card transactions that occurred after the robbery. He stated that Ms. Duerst sent him some photos that .included Ms. Seaton holding a black and silver gun. He testified that Ms. Duerst indicated that the person in the pictures was not the person who robbed her but that she believed the gun in the picture was the gun used in the robbery.
• According to Detective Macaluso, Ms. Duerst’s debit card had three completed transactions and one attempted transaction at two different gas stations. He stated that he obtained video footage of two subjects filling up gas tanks at one of *848 the gas stations, and' these subjects were later identified as defendant and Ms. 16Seaton. Detective Macaluso testified that the video also showed the subjects in a gold Jeep. According to Detective Maca-luso, when defendant later turned himself in at the police station, he arrived in what appeared to be the same gold Jeep.
Sergeant Joel O’Lear, a latent print examiner for the Jefferson Parish Sheriffs Office, testified that he obtained defendant’s fingerprints, and compared them to fingerprints in two certified conviction packets from convictions for aggravated burglary and felony carnal knowledge of a juvenile. He stated that it was his opinion that defendant was the same person who was fingerprinted in both prior cases. Furthermbre, the certified conviction packets reflect that the defendant in the prior cases has the sanie date of birth as defendant.
At trial, defendant testified on his own behalf. He stated that he did not know Mr. Masood or Ms. Duerst and had never seen either of them prior to trial. Defendant testified that he did not rob Mr. Masood on June -5, 2014, or Ms. Duerst on June 6, 2014, and he was not with Ms. Seaton on those dates. He stated that he was with his mother and her friend in Raceland, Louisiana.
Defendant testified that he had prior convictions in 2009 for aggravated burglary, accessory to armed robbery, and contraband in a jail cell, and in 2012 for obstruction of justice. Defendant testified that he pled guilty in his prior eases and accepted responsibility for the crimes in which he participated. He stated that he was innocent of the charges in the present case.
According to defendant, Ms. Seaton lied about him because she accepted a plea deal to avoid a lengthy sentence. He testified that he was not friends with Ms. Sea-ton or Ms. Robinson but he had heard of them. Defendant testified that he did not know what Ms. Seaton or Ms. Robinson had against him.
Defendant testified that all of the State witnesses were lying ánd that he was “the only one telling the truth.” He also stated that the video at the gas station was 17“lying.” He testified that he was not the person on the video footage at the gas station.

LAW AND DISCUSSION

On appeal, defendant raises two assignment of error. When the issues on appeal relate to both sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v, Hearold, 603 So.2d 731, 734 (La.1992). Accordingly, we will address the second assignment of error first, as it relates to the sufficiency of the evidence.
In his second assignment of error, defendant contends that the trial court erred by denying his motion for new trial and motion for post-verdict judgment of acquittal because the State failed to prove that he committed these crimes. Specifically, defendant asserts that the evidence was insufficient to prove the element of identity beyond a reasonable doubt, because the only eyewitness at trial to identify defendant as the perpetrator was Ms. Seaton. He contends that Ms. Seaton only testified because she received a beneficial plea agreement in exchange for her testimony against him.
In reviewing the sufficiency of the evidence, an appellate court must determine if the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable *849 doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Michel, 09-953, p. 4 (La.App. 5 Cir. 5/11/10), 41 So.3d 532, 534, writ denied, 10-1357 (La. 1/7/11), 52 So.3d 885. A review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. State v. Jones, 08-20, p. 6 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. Rather, a reviewing court is required to consider the whole record and determine whether a Irrational trier of fact would have found the State proved thé essential elements of the crime beyond a reasonable doubt. Id.
It is not the function of the appellate court to assess credibility or re-weigh the evidence. State v. Smith, 94-3116, p. 2 (La.10/16/95), 661 So.2d 442, 443. The trier of fact shall evaluate credibility, and when faced with a conflict in testimony, is free to'accept or reject, in whole or in part, the testimony of any witness. State v. Bradley, 03-384 (La.App. 5 Cir. 9/16/03), 858 So.2d 80, 84, writ denied, 03-2745 (La.2/13/04), 867 So.2d 688.
Defendant specifically challenges his convictions on the basis that the evidence was insufficient to prove his identity as the perpetrator' of the offenses. Encompassed within proving the elements of ah offense is the necessity of proving the identity of the defendant as the perpetrator. State v. Ray, 12-684 (La.App. 5 Cir. 4/10/13), 115 So.3d 17, 20, writ denied, 13-1115 (La.10/25/13), 124 So.3d 1096. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. Id.

Armed Robbery (counts one and three)

Defendant argues that the. State faded to meet its burden of proving his identity as the perpetrator of the armed robberies of Mr. ■ Masood (count one) and Ms. Duerst (count three) beyond a reasonable doubt; However, the record reflects that the State proved all of the elements of the offense of armed robbery in both instances and proved that defendant was the perpetrator, in both robberies beyond a reasonable doubt.
To support a conviction for the offense of ármed robbery under La. R.S. 14:64, the State must' prove beyond a reasonable doubt: (1) the taking; (2) of anything of value; (3) belonging to another from the person of another or that is in the immediate control of another; (4) by use of force or intimidation; (5) while armed with a dangerous weapon. State v. Reaux, 14-215, p. 16 (La.App. 5 Cir. 11/25/14), 165 So.3d 944, 953, writ denied, 14-2639 (La.10/9/15), 178 So.3d 1000.
Although Mr. Masood was upable to identify defendant as the perpetrator at trial, he identified defendant as the perpetrator in a photographic lineup approximately five days after the incident. He also testified that at the time the photographic lineup was presented to him, he was certain that he picked out the right person. Mr." Masood testified that the robber took his phone, wallet, keys, and cash from his person at gunpoint on the night of the robbery.
Detective Macaluso testified that the suspects in both robberies had similar physical. descriptions. Also, the two victims were targeted in the same area and described a similar weapon- used during the robberies. At trial, Ms. Duerst testified ■ that the. perpetrator was a light-skinned black male. Ms. Duerst specifically indicated that the perpetrator was about her height and age and had what looked like acne scarring on his face. Ms. Duerst testified that the robber, whose description *850 she provided matched that of defendant, pointed a gun in her face and said “give me what you’ve got.” Ms. Duerst testified that when she did not comply, the man violently ripped her purse from her arm, leaving her bruised.
The State also presented testimony at trial from Ms. Seaton who implicated defendant in the robberies. Ms. Seaton testified that she witnessed defendant rob the cab driver. She also heard Ms. Duerst scream and saw defendant taking Ms.-Duerst’s purse. Ms. Seaton also indicated that she received Ms. Duerst’s stolen phone from defendant, and the two used Ms. Duerst’s credit card to purchase gas. Ms. Seaton’s version of events was supported by the pictures taken with Ms. Duerst’s stolen phone and the video surveillance footage. Ms. Seaton identified herself and defendant on the surveillance footage at the gas station, which directly contradicts defendant’s claim that he was in Raceland on June 5 and June 6, 2014.
110On appeal, defendant questions the credibility of Ms. Seaton’s testimony at trial, because she received a beneficial plea agreement in exchange for her testimony. The trier of fact, in this case the judge, was aware of Ms. Seaton’s plea agreement and the benefit she gained from testifying. He heard testimony from other witnesses confirming Ms. Seaton’s version of events, but also had the opportunity to consider any inconsistencies in Ms. Seaton’s statements. Defendant suggests that Ms, Sea-ton implicated him in the robbery to relieve herself of blame; however, Ms. .Duerst specifically testified that Ms. Sea-ton, the individual in the pictures on her phone, was not the person who robbed her. The judge was in the best position to determine how credible Ms. Seaton and the other witnesses were and to make a determination regarding the weight of their testimony. The credibility of witnesses will not be reweighed on appeal. State v. Brown, 01-41, p. 9 (La.App. 5 Cir. 5/30/01), 788 So.2d 694, 701.
Considering the testimony and evidence, we find that a reasonable trier of fact could have determined that defendant was guilty beyond a reasonable doubt on both armed robbery counts. Accordingly, the trial court 'did not err in denying defendant’s motion for new trial and motion for post-verdict judgment of acquittal on the ground of insufficient evidence with regard to the armed robberies.

Felon in possession of a firearm (counts two and four)

Defendant was also convicted, of two counts of possession of a firearm by a convicted felon. In order to convict a defendant of illegal possession of a firearm by a convicted felon, the State must prove beyond a reasonable doubt that the defendant had: (1) possession of a firearm; (2) a prior conviction for an enumerated felony; (3) an absence of the ten-year statutory period of limitation; and (4) the general intent to commit the offense. State v. Melancon, 14-221, p. 14 (La.App. 5 Cir. 9/24/14), 151 So.3d 100, 110, writ denied, 14-2161 (La.5/22/15), 170 So.3d 982.
Inin the present case, the State offered testimony from Mr. Masood, Ms. Duerst, and Ms. Seaton that defendant was in possession of a firearm around the time of and during the two armed robberies. Mr. Masood and Ms. Duerst confirmed that defendant used a gun during the robberies in order to acquire their personal belongings. Ms. Seaton indicated that defendant gave her a.gun so that she could take a picture with it.
The State offered evidence of defendant’s prior felony convictions through the testimony of Sergeant O’Lear, who stated that he had taken fingerprints from defendant and compared them to fingerprints *851 contained in the certified conviction packets for case number 08-2398, a: conviction for aggravated burglary in violation of La. R.S. 14:60, and case number 06-639, a conviction for .carnal knowledge of a juvenile in violation of La. R.S. 14:80. Sergeant O’Lear testified that the prints he took from defendant matched those found in both certified conviction packets. The certified conviction packet in case number 08-2398 reflects that defendant pled guilty on December 14, 2009, and defendant admitted at trial that he had a prior conviction for aggravated burglary from 2009. The certified conviction packet in case number 06-639 reflects that defendant pled guilty on June 12, 2007. Both of these convictions were within ten years of the crimes in the present matter.
Considering the testimony and evidence presented, we find that the State proved beyond a reasonable doubt that defendant possessed a firearm as a convicted felon, as alleged in counts two and four. This assignment of error is without merit.
In his first assignment of error, defendant claims that the trial court erred by denying his motion for continuance of the first trial setting. Defendant argues that the trial court should have granted his motion for continuance because “the case was not that old.” He notes that the State offered a plea deal to his co-defendant in exchange for her testimony against him, which caused him to lose confidence in 112his attorney’s ability to negotiate and advocate on his behalf. He claims that he desired to seek private counsel and that he had a right to hire private counsel.
Defendant further asserts that the defense did not request any prior trial continuances and that any previous delay was caused by the State’s assertions that the co-defendant would be tried prior to defendant. Defendant argues that the theory of his defense was based on identity, and that his co-defendant was the only witness at trial who was able to identify him. ■ He asserts that the failure of the trial court to allow him to hire a private attorney to combat this new development was not harmless error.
A motion for a continuance must be made in writing, allege the specific grounds upon which it is based, and be filed at least seven days prior to trial. At any time upon written motion and after contradictory hearing, the court may grant a continuance but only upon a showing that the motion is in the interest of justice. La. C.Cr.P. art. 707.
At the discretion of the. court, a timely filed motion for continuance may be granted if there is good ground to continue. La.C.Cr:P. art. 712. Whether to grant or refuse a motion for a continuance rests within the sound discretion. of the trial judge, and a reviewing court will not disturb such a determination absent a clear abuse of discretion; State v. Simmons, 13-258, pp. 9-10 (La.App. 5 Cir. 2/26/14), 136 So.3d 358, 366, writ denied, 14-674 (La.10/31/14), 152 So.3d 151; State v. Shannon, 10-580, p. 11 (La.App. 5 Cir. 2/15/11), 61 So.3d 706, 714-15, writ denied, 11-559 (La.9/30/11), 71 So.3d 283. Generally, a conviction will not be reversed even on a showing of an improper denial of a motion for a continuance absent a showing of specific, prejudice. Simmons, 13-258 at 10, 136 So.3d at 366; State v. Manning, 03-1982 (La.10/19/04), 885 So.2d 1044, 1077, cert. denied, 544 U.S. 967, 125 S.Ct. 1745, 161 L.Ed.2d 612 (2005).
I i.Jn the present case, the record reflects that on February 26, 2015, .defendant informed the trial court at a hearing that he wished to retain his own- attorney. The trial court set a date of March 20, 2015, for defendant to name an attorney. On March 20, 2015, the court granted defendant a *852 continuance and set a date' of April 17, 2015, for defendant- to name an attorney. The April 17, 2015 status hearing was continued and reset to May 11, 2015, by the trial court. On May 11, 2015, at a hearing for defendant to name a private attorney, defendant informed the cqurt that he was unable to retain private counsel.
The first trial date was set for November 30, 2015.- Defendant failed to timely file a written motion for continuance seven days before trial. Instead, he made an oral motion to continue trial on the same date as the initial trial setting, November 30, 2015. The trial court denied the motion and specifically noted that defendant had been in jail for more than a year, giving him adequate time to hire -private counsel. However, the trial court did reset the trial' date to December 2, 2015, for other reasons. On December 1, 2015, the day before the new trial date, defendant filed a written motion for continuance, stating again that he wished to hire private counsel. The. motion for continuance was denied on December 2,2015.
Defendant had more- than a year and four months between his July 28, 2014 arraignment and the November 30, 2015 scheduled trial date to hire private counsel and prepare for trial. Further, defendant had previously stated that he would obtain private counsel on two occasions, but he later informed the trial court of his inability to' obtain private counsel on May 11, 2015.
Defendant also argues that he should have been granted a continuance because of the new development of his co-defendant entering a plea agreement in exchange for her testimony against defendant. However, defense counsel stated | Mthat she was aware that the co-defendant had entered a plea deal with the State at least by August 26, 2015, which was more than three months prior to the trial date.
Based on the record before us, we find that the trial court did not abuse its discretion by denying defendant’s motion to con-tinúe trial. This assignment of error is without merit.

ERRORS PATENT

The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v, Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The following errors requiring corrective action or discussion were noted.
First; the record reflects that defendant received illegal sentences on counts one and three. Defendant received enhanced' sentences -on Counts one and three due to his' use of a firearm during the commission ■ of the armed robberies, pursuant to La. R.S. 14:64.3. However, the record reflects that the State failed to properly enumerate a violation of La. R.S. 14:64.3 in the bill of information or provide defendant with written notice of the State’s intent to utilize La. R.S. 14:64.3 to enhance his sentences.
This Court has previously held that a trial court errs in enhancing a defendant’s sentence under La. R.S. 14:64.3 when the State has not filed written notice of its intent to seek enhancement or charged the defendant with a violation of La. R.S. 14:64.3 in the bill of information. See State v. Robinson, 06-464, p. 4 (La.App. 5 Cir. 12/12/06), 947 So.2d 783, 785. See also State v. Willis, 45,857 (La.App, 2 Cir. 12/15/10), 56 So.3d 362, writ denied, 11-150 (La.6/17/11), 63 So.3d 1034.
In the present case, because the record reflects that the State did not charge defendant with a violation of La. R.S. 14:64.3 or provide other written notice of its intent to seek enhancement of his sentence-under this statute, the five-year [ ^enhancement of defendant’s sentences on counts one and *853 three must be vacated. Accordingly, we vacate the five-year enhancement on counts one and three., and thereby amend the multiple offender sentence on. count one to 49½ years and the sentence on count three to 40 years at hard labor, both to be served without benefit of parole, probation, or suspension of sentence.
Next, we note that the trial court imposed, illegally lenient sentences on counts two and four by failing to impose the fine required by La. R.S. 14:95.1. La. R.S. 14:95.1 provides for a fine of “not less than one thousand dollars nor more than five thousand dollars.”
While finding the omission of the imposition of a fine in such cases to be error, this Court has, as a matter of discretion pursuant to La.C.Cr.P. art. 882, declined to correct an illegally lenient' sentence based on the defendant’s indigent status. State v. Robinson, 15-610 (La.App. 5 Cir. 1/27/16), 185 So.3d 212, 215; State v. Campbell, 08-1226, p. 8 (La.App. 5 Cir. 5/26/09), 15 So.3d 1076, 1081, writ denied, 09-1385 (La.2/12/10), 27 So.3d 842. In the present case, defendant is indigent as indicated by his representation by the Louisiana Appellate Project, which, provides appellate services for indigent criminal defendants in non-capital felony cases. Due to defendant’s indigent status, we decline to remand this matter for impositipn of the mandatory fines,
Next, the offense date and adjudh cation date set forth in the uniform commitment order related to the multiple bill are incorrect. The multiple bill uniform commitment order reflects an offense date of June 5, 2012. The date of the armed robbery in count one, which the multiple bill relies on, was actually June 5, 2014. Also an adjudication date , of December 3, 2015, is memorialized in the multiple bill uniform commitment order. However, defendant was found to be a second felony offender on January 22,2016.
hfiThis Court has previously remanded a case for correction of the uniform commitment order in its error patent review. See State v. Lyons, 13-564, p. 9 (La.App. 5 Cir. 1/31/14), 134 So.3d 36, 41, writ denied, 14-0481 (La.11/7/14), 152 So.3d 170. Accordingly, we remand this matter and order that the multiple bill uniform commitment order be corrected to reflect the proper offense date and adjudication date. We further order the Clerk of Court for the 24th Judicial District Court to transmit the original of the corrected uniform commitment order to the officer in charge of the institution to which defendant has been sentenced and the Department of Corrections’ legal department. See State v. Long, 12-184 (La.App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142.

DECREE

For the foregoing reasons, we affirm defendant’s convictions. We also affirm his sentences on counts two and four, and affirm, as 1 amended, his sentences on counts one and three. Finally, we remand to the trial court for correction of the uniform commitment order pertaining to the multiple bill.

CONVICTIONS AFFIRMED; SENTENCES ON COUNTS TWO AND FOUR AFFIRMED; . SENTENCES ON COUNTS ONE AND THREE AFFIRMED AS AMENDED; REMANDED WITH INSTRUCTIONS.